IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RONALD J. SINGEL,

                    Plaintiff,                      OPINION AND ORDER

     v.

                                             09-cv-502-slc

CITY OF CHIPPEWA FALLS, ABC
INSURANCE COMPANY, GREGORY
HOFFMAN, DENNIS DOUGHTY, JACK
COVILL, BRIAN FLYNN, GREG
DACHEL, JASON ANDERSON, BOB
HOEKSTRA and SUSAN ZUKOWSKI,

                    Defendants.

---

In this action brought pursuant to 42 U.S.C. § 1983 and state law, plaintiff Ronald Singel contends that the defendants terminated him as the city administrator of Chippewa Falls, Wisconsin in violation of his procedural due process rights under the Fourteenth Amendment and his employment agreement with the city. Specifically, Singel contends that the defendants: 1) deprived him of his property interest in his continued employment with the city without an opportunity to be heard; 2) deprived him of his liberty interest in future employment when they disclosed his performance deficiencies to the media after his termination; and, 3) breached the provisions of his employment contract related to his severance pay.

Defendants have moved for summary judgment, arguing that plaintiff's federal claims fail because the disclosure of Singel's personnel file did not rise to the level of a constitutional violation and because Singel did not have a protected property interest in his employment as an at-will employee. Dkt. 15. Defendants assert that Singel cannot bring his state law breach of contract claim because he failed to file a proper notice of claim pursuant to Wis. Stat. § 893.80(1)(b).

Because no reasonable jury could find that Singel had a protected property interest in his continued employment with the city or that the named defendants' release of Singel's personnel file to the media was so stigmatizing that it infringed on his liberty interest in future employment, I conclude that defendants are entitled to summary judgment on Singel's procedural due process claims.  With no federal claims remaining, I decline to exercise supplemental jurisdiction over Singel's state law claim.  Therefore, it is unnecessary to address the parties' arguments related to the state notice of claim statute.

From the parties' proposed findings, I find the following facts to be undisputed for the purpose of deciding the motion:

## FACTS

### I.  The Parties

Plaintiff Ronald Singel and defendants Gregory Hoffman, Dennis Doughty, Jack Covill, Brian Flynn, Greg Dachel, Jason Anderson, Robert Hoekstra and Susan Zukowski are residents of Chippewa Falls, Wisconsin.  On February 29, 2008, Singel became the city administrator of Chippewa Falls.  In that position, he served as a public official and had administrative duties relating to the day-to-day operation of city government.  Defendant Hoffman is the mayor of Chippewa Falls and the other individual defendants are members of the city council.  Defendant City of Chippewa Falls is a Wisconsin municipal corporation.

### II.  Singel's Employment Contract

Before Singel started work in 2008, he and the city executed a written employment agreement setting forth the terms and conditions of his employment.  The agreement contained

specific provisions governing the process by which Singel could be terminated by the city. Section 14A of the contract provided that Singel could be terminated "for cause" without any severance compensation.  Section 14B provided that if he was terminated "without cause," he would be entitled to severance compensation for a period of six months after the termination occurred.  That section of the agreement states:

> If termination is without cause, the Employee shall receive a written notice of termination.  In such a termination without cause the Employee shall receive six months of financial protection consisting of any combination of notice of termination and/or severance compensation of an amount equal to salary and insurance coverage.  He shall be entitled to accrued benefits according to city policy.  The council shall determine the manner of termination compensation in terms of notice and severance compensation.

Singel understood that if he was terminated by the city without cause, essentially he would be an employee at-will and would receive a severance benefit consisting of some additional salary and continued health insurance coverage.

## III.  Special Council Meeting

On January 12, 2009, the city posted a "Notice of Public Meeting - Special Council Meeting" for 5:30 p.m. on January 13, 2009.  The notice stated the following:

> **CONTEMPLATED CLOSED SESSION** under 19.85 (1) (b) for "Considering dismissal, demotion, licensing or discipline of any public employee" to consider and discuss the Chippewa Falls City Administrator.  Will return to open session.

Singel attended only the open session of the meeting and did not make any statements. Although the common council privately considered terminating Singel's employment in closed

session, the council voted in open session to terminate Singel's employment without cause under

section 14 B of the employment agreement.  The published minutes from the meeting state:

> **Motion by Hoekstra/Doughty** to dismiss the City Administrator from his position, without cause, and relieve him of all job duties forthwith, but with the right to continue to receive salary and health insurance coverage as presently paid or provided for 6 months from today's date plus any accrued benefits per City policy and that a written notice of this dismissal and the severance compensation be provided to the City Administrator.  **Said motion passed after the following roll call vote:  Aye - Hoekstra, Doughty, Flynn, Dachel, Anderson, Zukowski; Abstain - Covill.**

The minutes from the closed session part of the meeting state in pertinent part that:

> The council discussed the options of how to handle City Administrator Ron Singel's performance issues.  The options discussed were to do nothing, put him on probation or terminate him.  Performance issues discussed included absences from his office and comments were made about his office being empty more than it was filled.  The various committees commented on how the administrator was unable to coordinate joint meetings and notify attendees.  They indicated he was generally unprepared at city meetings.  Many of them gave examples of tasks they had asked the administrator to research or complete but had never received action on.  There was much discussion regarding Singel's lack of initiative and his inability to complete tasks as requested by the Council.  There were comments made on information he provided to the newspaper as some of it was inaccurate or inappropriate.

On January 14, the city attorney, Robert A. Ferg, sent a letter to Singel, stating that:

> As required by the Employment Agreement you are hereby being notified in writing that on January 13, 2009 the Chippewa Falls Common Council dismissed you from the position of Chippewa Falls City Administrator, without cause.  The dismissal was effective forthwith. You will continue to receive salary and health insurance coverage as presently paid or provided for six (6) months from January 13, 2009.  You will also receive any accrued benefits per City policy. Thank you for your service.

After his termination, Singel read in the newspaper that Dachel said that Singel did not know how to organize meetings and that Hoffman said that the common council thought Singel would fit in better with the city than he did.

### IV. Open Records Request

Shortly after January 14, 2009, the city asked Ferg to review the following open records request from the Leader Telegram, an Eau Claire newspaper:

> Any and all performance evaluations and records regarding any disciplinary investigation and any other records that would indicate the reason or reasons that led to the Chippewa Falls City Council's decision on Jan. 13, 2009 to dismiss former City Administrator Ron Singel.

On January 19, Ferg determined that the newspaper's request should be granted after notice was provided to Singel. The next day, Ferg sent Singel a letter telling him about the request for his personnel records and including a copy of the open records statute, Wis. Stats. § 19.356. Ferg also advised Singel of his statutory rights:

> Under § 19.356(3) you have five (5) days after receipt of this notice to provide written notification to the City of Chippewa Falls of your intent to seek a court order restraining the City of Chippewa Falls from providing access to the requested record. Under § 19.356(4) you have ten (10) days from the receipt of this notice to commence an action seeking a court order to restrain the City of Chippewa Falls from providing access to the requested record. If you commence such an action you must name the City of Chippewa Falls as a defendant. The Leader-Telegram has a right to intervene in the action. Under § 19.356(5) the City of Chippewa Falls will not provide access to the requested record for twelve (12) days from the date of this letter. If you commence a legal action the City of Chippewa Falls will not provide access to the requested records during the pendency of any such action or of an appeal therefrom. Under § 19.356(9) you may have a period

5

of five (5) days to augment the records to be released with written documentation and comments selected by you. In such event the City of Chippewa Falls will release the record as augmented by you.

On or about January 22, Singel received Ferg's letter by certified mail. Singel did not notify the city that he was seeking a restraining order to prevent the release of his personnel records, he did not commence a civil action to prevent the release of his personnel records, and he did not augment his personnel record. Although Singel was concerned about his personnel file being released to the press, he also had concerns that any effort he made to stop the release of his records would create a media focus on him that would be worse than the disclosure itself. Singel made a conscious decision to allow his personnel file to be released as it was and then deal with media afterwards in terms of augmenting or explaining some of the things contained in the file.

Sometime after February 1, 2009, the city released Singel's personnel records to the newspaper. Among the documents released was a written warning issued by Mayor Daniel Hedrington to Singel on August 5, 2008 and signed by Hedrington, Singel, Council President Doughty and Alder Hoffman. The warning stated:

> This letter is a composite of circumstances regarding your job performance since your start date. Many people from within the organization as well as from outside have expressed that they have detected the strong odor of alcohol when interacting with you. I have also detected this prevalent odor as per our conversation on June 30, 2008. This has continued to be an extreme concern. Should this continue in the future, the administration will be forced to take further action, possibly resulting in termination.
>
> Your time away from the normal job site is extreme and unacceptable. As I explained on June 30, 2008, this is also a major concern. As is standard policy of all department heads, all requests for time away from the normal job site are to be routed through

the mayor's office for approval. Vacation requests must be submitted at least one week in advance and are not authorized unless approval is given.

In the event of sick leave, you must notify the mayor's office on that day. If you need to be away during the day for any reason, including job related reasons, the mayor's office must be notified with your reason, departure time, and your anticipated return time.

The job performance deficiencies stated in this letter will be reviewed approximately every twenty days and must be corrected or improved to the administration's satisfaction. Failure to comply with this directive every twenty days, up to a maximum of sixty days, will be justification for further disciplinary action or termination.

The Leader Telegram and other media sources subsequently reported the contents of the written warning to the public.

Since being terminated by the City, Singel has submitted approximately 150 to 200 job applications for positions in public employment, private firms, not-for-profit agencies and universities. Singel also conducts online searches for jobs on a daily basis. Singel has no personal knowledge that any of his prospective employers have any information about his past employment with the city, including but not limited to his termination. Out of the 150 to 200 applications Singel has submitted, he has been called for only one interview for a position as an economic development consultant at the Wisconsin Department of Commerce. Singel told the state interviewers that he had worked for the City of Chippewa Falls for one year. No one asked him why his employment with the city had ended. Singel did not receive a job offer from the State of Wisconsin and was not told why he was not selected for the position.

ANALYSIS

## I.  Summary Judgment Standard

Summary judgment is proper where there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and where the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'"  *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007) (quoting *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005)).  In determining whether a genuine issue of material facts exists, the court must construe all facts in favor of the nonmoving party.  *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007).  Even so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II.  Due Process Claims

Singel claims that defendants violated his procedural due process rights in two respects: by not conducting an evidentiary hearing prior to his termination and by publically disclosing stigmatizing information in his personnel file, which prevented him from getting another job.

A procedural due process violation occurs under the Fourteenth Amendment when a state actor deprives an individual of a constitutionally protected interest in "life, liberty, or property" without providing adequate process.  Therefore, a due process analysis involves a two-step inquiry: (1) whether the defendants deprived the plaintiffs of a constitutionally protected liberty

or property interest; and (2) if so, whether that deprivation occurred without due process of law. *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 616 (7th Cir. 2002)).

### A.  Property Interest in Continued Employment

"A person's interest in a benefit, such as continued employment, constitutes 'property' for due process purposes only if 'there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit.'" *Covell v. Menkis*, 595 F.3d 673, 675-76 (7th Cir. 2010) (quoting *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996)).  A protected property interest in employment can arise from such independent sources as a state statute, municipal ordinance or an express or implied contract.  *Id.*; *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Singel relies on his employment contract with the city and § 1.32 of the Chippewa Falls Code of Ordinances as the sources of his property interest in his continued employment as city administrator.  Section 1.32 states that the city administrator "shall hold office for an indefinite term subject to removal for just cause only by a vote of at least 5 councilpersons. . ."[1]  However, the ordinance goes on to state that in the event that "termination is without cause, then the termination shall occur pursuant to the Employment Agreement that exists between the City and the City Administrator."   Singel's employment agreement also clearly allows the city the discretion of terminating Singel with or without cause.

---

[1]  As defendants point out, Singel failed to include the content of the ordinance as a proposed finding of fact.  However, the court takes judicial notice of the ordinance.

Although the ordinance and Singel's employment contract contemplate continued employment and provide for "just cause" removal, Singel has not established that there was a mutually explicit understanding that he could be terminated *only* for cause.  Contrary to Singel's suggestion, the mere existence of a contract does not, by itself, create a property interest.  *Yatvin v. Madison Metropolitan School District*, 840 F.2d 412 (7th Cir. 1988) (finding it necessary to "distinguish between 'mere' contract rights and property rights created by contracts"); *Sudeikis v. Chicago Transit Authority*, 774 F.2d 766, 770 (7th Cir. 1985) (breach of contract claim not co-extensive with claim for deprivation of property interest).  Only those employees whose employment can be terminated *only* for cause have a property interest in their jobs.  *Lalvani v. Cook County*, 269 F.3d 785, 791 (7th Cir. 2001); *see also Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997) (public employees who can be discharged only for cause have "constitutionally protected property interest in their tenure and cannot be fired without due process").

Therefore, the fact that the city ordinance and Singel's employment contract allowed the city to treat Singel as an at-will employee means that Singel did not have a constitutionally protected property interest in his position as city administrator.  *Miyler v. Village of East Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008) (there must be "some substantive criteria limiting the [city's] discretion").  A statute that simply provides procedures to be followed does not include a substantive right.  *Id.*

Singel argues that because the common council minutes show that defendants had specific reasons for terminating him, he actually was terminated for cause.  Although there is evidence that the defendants expressed displeasure with Singel's performance, the minutes are pellucid that defendants nonetheless chose to terminate Singel without cause and to award

severance and insurance benefits, as provided for in section 14B of Singel's employment agreement. The minutes speak for themselves, but they are corroborated by common sense: if the defendants were going to terminate Singel for cause, they would have no obligation, no reason and no inclination to pay his severance and other benefits. Choosing to terminate Singel without cause spared the defendants the cost in time, money and discomfort of what likely would have been a messy hearing; perhaps the defendants even figured that providing Singel with the money and deniability afforded by without-cause termination would spare them a subsequent lawsuit. But there is no need to speculate as to the defendants' motivation because the record on the without-cause nature of the termination is clear and factually uncontradicted. Without more, no reasonable jury could conclude that defendants actually fired Singel for cause, which would have entitled him to an evidentiary hearing or other process. Accordingly, defendants are entitled to summary judgment on Singel's property interest due process claim.

## B. Liberty Interest in Future Employment

Singel asserts that defendants' response to an open records request resulted in local media publishing information about his alleged performance deficiencies, including absenteeism and using alcohol on the job, and prevented him from obtaining other employment. A government employee's liberty interests are implicated when the government "make[s] any charge against him that might seriously damage his standing and associations in the community" or "impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Covell*, 595 F.3d at 677 (quoting *Roth*, 408 U.S. at 573)). To prevail on such a claim, Singel must show that: 1) he was stigmatized; (2) the stigmatizing

information was disclosed publically by the named defendants; and, (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Id.* at 677-78 (citation omitted). Singel has failed to make these showings.

First and most importantly, Singel has failed to demonstrate that any of the individually named defendants disclosed the allegedly stigmatizing information. From the undisputed facts of record, the only possible conclusion is that Robert Ferg, the city attorney, released Singel's personnel file to the media. Individuals cannot be liable under 42 U.S.C. § 1983 for the actions of others, even if they were affiliated in some way with Ferg or the city. *Id.* at 678 (citing *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1032-33 (7th Cir. 1992) (plaintiff must prove that an individual defendant disseminated stigmatizing information to public)). In *McMath*, 976 F.2d at 1034, the Court of Appeals for the Seventh Circuit noted that even though testimony at trial might have lead to an inference that *someone* within city government revealed false and damaging information about plaintiff, there was insufficient evidence linking particular defendants to the public statements. The court also held that the city employer could not be held liable unless an official whose acts constituted official policy of the city violated McMath's liberty interests. *Id.* at 1035. Singel has failed to adduce any evidence showing that Ferg was an official policy maker for the city.

Second, as defendants point out, the denial of "employment is not, by itself, stigmatizing conduct in the legal sense of the term." *Hedrich v. Board of Regents of University of Wisconsin System*, 274 F.3d 1174, 1184 (7th 2001) (citations omitted) (termination is only stigmatizing if accompanied by publicly announced reason that "impugns [the employees] moral character" or implies "dishonesty or other job-related moral turpitude"). Although the warning letter

released to the media contained potentially stigmatizing statements regarding Singel's absenteeism and use of alcohol, in order to be actionable, these statements had to be defamatory. *Strasburger v. Bd. of Education, Hardin County Comm. Unit Sch. Dist. No. 1*, 143 F.3d 351, 355-56 (7th Cir. 1998); *Hedrich v. Board of Regents of the University of Wisconsin System*, 2000 WL 34229419, *10 (W.D. Wis. Aug. 16, 2000). Singel did not avail himself of the opportunity to correct or augment this information prior to its release and he has not proposed any other facts from which a reasonable jury could conclude that these statements were false.

Finally, even if Singel could have identified false and stigmatizing statements made by specific defendants, he still would have to show that the public release of those statements made it virtually impossible for him to find new employment. *Hedrich*, 274 F.3d at 1184. Singel cannot satisfy this requirement. The only evidence that he points to is the fact that since his termination, he has been called for only one interview and did not receive a job offer. Given this country's severe, persistent recession and the correspondingly bleak job market, this lack of success by itself proves nothing. Perhaps more to the point, no prospective employer ever asked Singel how or why his employment ended. It is undisputed that Singel has no knowledge that any of his prospective employers have any information about his past employment with the city. Therefore, defendants also are entitled to summary judgment on Singel's liberty interest claim.

## III.  State Law Claim

Because I am denying Singel leave to proceed on his federal claims, I will decline to exercise supplemental jurisdiction over his state law breach of contract claim. If Singel wishes to pursue this claim, he is free to do so in state court.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, dkt. 15, is

GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close

this case.

Entered this 15th day of July, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge